UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HARRIET BROWN,        )<br>                                           )<br>            Plaintiff,          ) | Case  No. EDCV 04-629 AJW |
|             )<br>     v.                                ) | MEMORANDUM OF DECISION |
|             )<br>JO ANNE B. BARNHART,         )<br>Commissioner of the Social        )<br>Security Administration,          )<br>             )<br>            Defendant.          )<br>_____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are undisputed and are summarized in the Joint Stipulation. [See JS 2-3]. Plaintiff protectively filed an application for benefits on November 18, 2002 alleging that she had been disabled since May 2002 due to pain, swelling, and limited motion in her left hand and left wrist. [JS 2; Administrative Record ("AR") 77-78; see AR 65, 92, 98-99].  In a written hearing decision dated December 22, 2003, Administrative Law Judge F. Keith Varni (the "ALJ") found that plaintiff retained the residual

functional capacity ("RFC") to perform a narrowed range of light work, and that she was not disabled because she could perform work available in significant numbers in the national economy. [JS 2; AR 53]. The Appeals Council denied plaintiff's request for review of that decision. [AR 4-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004 (9th Cir. 2005); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Thomas</u>, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401 (quoting <u>Consolidated Edison Co. of New York v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Thomas</u>, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." <u>Thomas</u>, 278 F.3d at 954 (citing <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Dr. Curtis**

Plaintiff contends that the ALJ erred in weighing the opinion of treating psychiatrist Thomas Curtis, M.D..

Plaintiff's primary care physician placed her on disability from her job as a money counter for a bank on May 29, 2002 due to pain, swelling, and other symptoms in her left

wrist. She was diagnosed with reflex sympathetic dystrophy ("RSD") of the left wrist[1], and she pursued a claim for workers' compensation. [See AR 313-314]. She returned to her job with work restrictions in August 2003, but she left work again on October 6, 2003 due to left upper extremity pain. Plaintiff returned to work again on November 12, 2003, and then took off work again on November 28, 2003 because of the flu. She was due to return to work on December 9, 2003, the day after the hearing. [AR 51, 211-213, 460-463].

In January 2003, plaintiff's treating orthopedist, Dr. Greenspan, referred plaintiff to Dr. Curtis for a psychiatric consultation, after she "decided against undergoing pain management injections" for reflex sympathetic dystrophy of her left wrist "secondary to anxiety." [AR 352-353]. Based on an interview, mental status examination, and some "highly abnormal" psychological test results, Dr. Curtis diagnosed depressive disorder not otherwise specified and psychological factors affecting medical condition. He opined that plaintiff was "temporarily totally disabled" on a psychiatric basis for purposes of her workers' compensation claim. [AR 320-321]. Dr. Curtis prescribed anti-depressant medication and Ambien for sleep, and he also recommended individual psychotherapy and biofeedback (which plaintiff apparently received at his clinic, although there are no treatment notes). [See AR 241-246, 322-323]. Plaintiff saw Dr. Curtis for follow-up visits in February, April, and June 2003, and he extended her temporary total disability through June 2003. [AR 241-246].

---

[1] According to the Commissioner, RSD

> is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger [RSD]. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone.

Social Security Ruling ("SSR") 03-02p, 2003 WL 22399117, at *1.

1      In July 2003, Dr. Curtis issued a "permanent and stationary report" rating her disability
2 as "at a moderate degree at about 50% standard level" based on her signs and symptoms since
3 her RSD diagnosis and her prior psychiatric history, which included two months-long periods
4 of disability due to work-related stress.  [AR 239-240; see AR 314, 321-322].  Plaintiff
5 continued to receive treatment from Dr. Curtis through October 2003, when he issued his full
6 permanent and stationary report.  [AR 167-197 214, 216].  Dr. Curtis opined that plaintiff's
7 "overall moderate degree of emotional impairment" would correlate to "slight-to-moderate"
8 restrictions  in all eight of the work-related abilities he rated, namely the ability to comprehend
9 and follow instructions, perform simple and repetitive tasks, maintain work pace, perform
10 complex and varied tasks, relate to other people, influence people, accept and carry out
11 responsibility, and make generalizations, evaluations, or decisions.[2] [AR 189-190].

12      Plaintiff argues that the ALJ did not recognize Dr. Curtis as a treating physician, and
13 that he was mistaken when he said that Dr. Curtis characterized plaintiff's restrictions as "very
14 slight" because he was not looking at the part of Dr. Curtis's report that rated her overall level
15 of psychiatric disability.  It is unclear whether the ALJ recognized Dr. Curtis as a treating
16 physician, but whether he did so or not, the controlling question is whether he articulated clear
17 and convincing reasons, supported by substantial evidence, for rejecting Dr. Curtis's
18 uncontroverted opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

---

[2] Under the California workers' compensation regulations, psychiatric impairments are described in the following terms:

(1). Minimal (discomfort, but not disabling)

(2). Very slight (detectable impairment)

(3). Slight (noticeable impairment)

(4). Moderate (marked impairment)

(5). Severe (unable to perform work function)

See Cal. Code Regs. tit. 8, § 43.

The ALJ did not meet that standard because he misconstrued Dr. Curtis's opinion. For purposes of apportioning the causes of plaintiff's "overall moderate emotional impairment," Dr. Curtis opined that she had only "very slight" restrictions in all of the functional abilities rated due to factors outside of her industrial injury. [See AR 192-193]. Overall, however, she had "slight-to-moderate" restrictions in her work-related functional abilities. [See AR 189-190]. Since the social security disability scheme does not distinguish between impairments due to industrial and non-industrial causes, the ALJ should have addressed Dr. Curtis's opinion concerning plaintiff's overall "slight-to-moderate" level of mental impairment. In addition, he should have considered what those terms mean in the workers' compensation scheme in order to understand the significance of Dr. Curtis's uncontroverted opinion.[3] If he rejected that opinion, he was required to provide clear and convincing reasons for doing so. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-1109 (C.D. Cal. 2002) (explaining that the ALJ must consider workers' compensation medical opinions and must "translate" workers' compensation terms of art in order to accurately assess the implications of those opinions for the social security disability determination). Since the ALJ did none of those things, he committed legal error in assessing Dr. Curtis's opinion.[4]

**Dr. Greenspan's opinion**

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating orthopedist, Dr. Greenspan, that she was restricted to lifting no more than 10 pounds and typing no more

---

[3] During the hearing, plaintiff's counsel quoted the workers' compensation definitions of "slight" and "moderate," and he made a diligent attempt to translate the workers' compensation terms into social security terms in order to elicit testimony from the vocational expert that would accurately reflect the limitations Dr. Curtis described. [AR 484-490]. Therefore, the need to consider the differences between the workers' compensation and social security disability terms was squarely before the ALJ.

[4] Since the ALJ erred in construing and evaluating Dr. Curtis's opinion, it is unnecessary to consider plaintiff's related contentions that the ALJ should have recontacted Dr. Curtis and obtained medical expert testimony to clarify plaintiff's mental limitations, that he failed adequately to consider her mental and physical limitations in combination, and that he should have considered granting a closed period of disability based on the combined effects of her impairments. [See JS 6-7].

than three hours a day.

Dr. Greenspan began treating plaintiff in November 2002. [AR 410-416]. He opined that she was temporarily totally disabled until July 1, 2003, a period of about nine months. [See AR 237, 248-416]. On that date he opined that her condition was permanent and stationary, and that she should be provided with vocational rehabilitation. [AR 237, 248]. In his permanent and stationary report, Dr. Greenspan opined that plaintiff "has a disability which will preclude her from forceful activities, a well as from fine finger manipulations with the left upper extremity. The patient should limit her typing to no more than three hours a day." [AR 235]. Dr. Greenspan did not include in his permanent and stationary report a restriction to lifting no more than ten pounds. The ALJ relied on that report, in part, to find that plaintiff can perform a range of light work involving "no used of the left minor upper extremity." [AR 50].

On a one-page progress report form dated August 5, 2003, Dr. Greenspan indicated that plaintiff had been instructed to return to modified work with no lifting in excess of ten pounds. [AR 221]. Although that single restriction differs significantly from the work restrictions described in his permanent and stationary report of a month earlier (which recommended no left extremity forceful activities or fine finger manipulations and typing no more than three hours a day), there was no explanation for the difference. No objective findings were noted on the form. Under subjective complaints, Dr. Greenspan noted that plaintiff complained of left wrist pain with activity. [AR 221]. Dr. Greenspan's diagnoses – left wrist sprain and left wrist RSD – were unchanged from his permanent and stationary report. [Compare AR 221 with AR 234-235]. On September 30, 2003, plaintiff completed a form confirming that she had returned to work with a restriction of no lifting over ten pounds. [AR 209]. In his examination report of that date, Dr. Greenspan noted that plaintiff had returned to work "with restrictions of no lifting over ten pounds and intermittent typing," but in the same report he mentioned his permanent and stationary report restricting plaintiff to "no forceful activities and fine finger manipulations with the left upper extremity" and "typing of three hours a day." [AR 213]. Dr. Greenspan did not indicate that he had modified his permanent and stationary disability

rating.[5] [AR 210-215].

Because Dr. Greenspan's permanent and stationary report included a comprehensive explanation of the objective and subjective factors supporting his work restrictions, and because the August 2003 lifting restriction appeared to be an ad hoc response to plaintiff's request to return to her old job, the ALJ did not err in relying on the permanent and stationary report and in disregarding the lifting restriction in Dr. Greenspan's August 2003 report. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)(noting that "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004) (upholding the ALJ's rejections of an opinion that was "conclusionary in the form of a check-list," and lacked supporting clinical findings).

**Credibility evaluation**

Plaintiff contends that the ALJ gave inadequate reasons for rejecting the alleged severity of her pain and other subjective complaints associated with RSD.

Plaintiff testified that she stopped working because the pain in her left hand became so severe she could not lift anything with it, and that the pain radiated into her shoulder, neck and back. [AR 458]. She testified that she also had pain and range of motion limitation in her left shoulder from a torn rotator cuff, which was surgically repaired in 1997, and that her wrist and shoulder problems combined to affect her left side, neck, and back. [AR 458-459]. Plaintiff said that she could not take prescribed Tylenol with codeine for the pain while she was

---

[5] In her hearing testimony, plaintiff indicated that she told Dr. Greenspan she wanted to try going back to her former job because she had been out a long time and liked it, and that he did not agree with that decision but said that she could try it if she limited her lifting to ten pounds and worked no more than eight hours. [AR 471-472]. Because plaintiff's past job as a money counter required her to life money trays weighing more than ten pounds [AR 457], her testimony suggests that Dr. Greenspan attempted to craft a restriction aimed specifically at that job, perhaps as a means of ensuring that plaintiff would not exceed the restrictions he already had recommended in his July 2003 permanent and stationary report. Dr. Greenspan obviously could have included a lifting restriction in that report, but he did not.

working. [AR 460-462]. Although she had returned to work in August 2003, she stopped working again from October 6, 2003 through November 11, 2003 because of the recurrence of disabling pain in her wrist, shoulders, head, and neck. [AR 461]. She returned to physical therapy and to her psychiatrist during that absence from work. [AR 461]. She resumed work again on November 12, 2003, but then was out from November 28, 2003 to December 8, 2003 with the flu. [AR 462-463]. During the period November 12, 2003 through November 28, 2003, plaintiff testified that she was still in pain at work and tried to work through it, but that she had either left work early or did not make it in about twice a week. [AR 463]. She said that there had been periods when she could not use her wrist at all due to pain and swelling, and that the pain was continuous, worse at some times than at others. [AR 464-465]. Plaintiff said that the pain and her uncertainty about its duration and whether she would be able to keep her job of 22 years made her feel bad and "threatened." [AR 465-467]. She also said that she had seen Dr. Curtis because she was depressed, and that she had trouble sleeping even with her Ambien prescription. [AR 470-471]. Against Dr. Greenspan's advice she had attempted to return to her past job as a money counter, but her hand symptoms had persisted and prevented her from doing that job. [AR 472]. Plaintiff also testified that she had only started driving again a month or two before the hearing. [AR 474].

Plaintiff's husband, David Brown, testified that after plaintiff stopped working in May 2002, he took a leave of absence of two and a half months to care for his wife. [AR 479-480]. He testified that he cooked for her, bathed her, and helped her to the rest room. [AR 479]. He said that she could not dress herself or do housework. [AR 479-480]. When he returned to work, he worked out a schedule with his daughter, and this arrangement continued until plaintiff returned to work in August 2003. [AR 480-481]. He characterized her mental state as "terrible" during this period due to pain, anxiety, and stress, and he said that she was not the same person he had been married to for 28 years. [AR 481].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms.

Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789,

792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

> The ALJ remarked that neither plaintiff's testimony nor that of her husband established any reason why the claimant could not have worked within the [RFC] found herein well within one year of the alleged onset date. The claimant asserted that had been depressed and had poor sleep and had had trouble with co-workers in the past. She does drive, and was able to drive up to one hour at a time in heavy urban traffic to Los Angeles this year. She has a California driver license renewed in August 2002, without restriction.

[AR 52].

The ALJ's credibility determination falls far short of providing specific, convincing reasons for disregarding her subjective complaints, particularly as they pertain to the period before she resumed working.[6] His conclusory analysis fails adequately to account for the testimony of plaintiff and her husband concerning her wrist, shoulder, neck and back pain during the period she was not working, her mental symptoms during that time, and her inability to care for herself without assistance prior to her return to work. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that the Commissioner must take into account lay testimony as to a claimant's symptoms unless she expressly determines to disregard such testimony, in which case "[s]he must give reasons that are germane to each witness")(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). The importance of a careful analysis of plaintiff's subjective complaints is magnified in this case because the Commissioner has recognized in her policy statements that

> [i]t is characteristic of [RSD] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual....[¶] [RSD] patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased

---

[6] At that point, her subjective complaints seem to stem from using (or overusing) her left hand, so that the ALJ's finding that she could perform light jobs not requiring its use appear to be consistent with her subjective complaints.

10

>sensitivity to touch. The degree of reported pain is often out of proportion to the severity of the precipitating injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.

SSR 03-02p, 2003 WL 22399117, at *2. Accordingly, the ALJ did not meet his burden to provide specific, convincing reasons based on substantial evidence for rejecting her alleged pain complaints.

**Choice of remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).

For purposes of applying the Smolen test, the court has discretion not to require the "crediting as true" of evidence rejected for insufficient reasons. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)(holding that a court has discretion not to require the "crediting as true" of testimony rejected for insufficient reasons); Bunnell v. Barnhart, 336 F.3d 1112,

1115-1116 (9th Cir. 2003)(applying the Smolen/Harman remand test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," whether the ALJ "must credit her testimony as true,"and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

In this case, it is not clear from the record that the ALJ is required to find plaintiff disabled, or if she is disabled, for what period.  There are issues that remain to be resolved, including the proper weight to be accorded to Dr. Curtis's opinion and the hearing testimony. Accordingly, the appropriate remedy is a remand for further administrative proceedings.

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: February 13, 2006

                                                    /s/
                                    ANDREW J. WISTRICH
                                    United States Magistrate Judge